UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWIGHT MOSLEY,

        Petitioner,         Case Number: 2:15-CV-12631
        HON. GEORGE CARAM STEEH

v.

TONY TREIWEILER,

        Respondent.
_____/

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

Petitioner Dwight Mosley has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for two counts of second-degree criminal sexual conduct. Petitioner, who is presently incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan, seeks habeas relief on the grounds that his plea was involuntary, he received ineffective assistance of counsel, the trial court and prosecutor breached the plea agreement, and the prosecutor withheld exculpatory evidence. For the reasons set forth, the Court denies the petition.

**I. Background**

Petitioner's convictions arise from Petitioner's contact with Derrick Shipman while Petitioner was working as a parole agent at a Michigan Department of Corrections' residential treatment facility. The trial court accepted Shipman's preliminary examination testimony as the factual basis for Petitioner's no-contest plea. Shipman testified that he reported to Petitioner while housed at the Tuscola Residential Reentry

Program.  Sometime in October or November 2010, Petitioner offered to provide Shipman with contraband (tobacco) if Shipman allowed Petitioner to touch Shipman's penis through his pants.  On three to five occasions, Petitioner provided Shipman with tobacco in exchange for Shipman's allowing Petitioner to touch him.  On one occasion, Petitioner drove Shipman to obtain his state identification.  On the way, they stopped at Petitioner's house, where Petitioner put Shipman's penis in his mouth.

On October 4, 2011, Petitioner pleaded no contest to two counts of second-degree criminal sexual conduct, pursuant to a plea agreement providing that sentencing would be delayed for a year.  If Petitioner did not violate the terms of his delayed sentence, he would be convicted of fourth-degree criminal sexual conduct and no jail time imposed.  *See* 10/4/11 Tr. (ECF No. 11-7).  On November 14, 2011, he was sentenced in accordance with the plea agreement.  *See* 11/14/11 Tr. (ECF No. 11-8).  Petitioner, however, did not successfully complete the one-year delayed sentence term, and pleaded guilty to eight counts of violating the terms of his delayed sentence.  *See* 2/27/12 Order (ECF No. 11-9). Prior to sentencing, Petitioner filed a motion to withdraw his no contest plea on the ground of actual innocence.  The trial court denied the motion and, on March 12, 2012, Petitioner was sentenced to five years, 5 months, 15 days to 15 years' imprisonment for each second-degree criminal sexual conduct conviction.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals arguing that the trial court abused its discretion in denying Petitioner's motion to withdraw no contest plea.  The Michigan Court of Appeals denied leave to appeal for "lack of merit in the grounds presented."  *People v. Mosley*, No. 309359 (Mich. Ct. App.

May 9, 2012) (ECF No. 11-11). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim. The Michigan Supreme Court denied leave to appeal. *People v. Mosley*, 492 Mich. 870 (Mich. Sept. 4, 2012).

Petitioner then filed a motion for relief from judgment in the trial court, raising these claims: (i) ineffective assistance of counsel; (ii) trial court erred in denying motion to withdraw plea; (iii) breach of plea agreement; and (iv) sentence based upon inaccurate information. The trial court denied the motion. *See* 10/29/13 Op. & Or. Denying Motion for Relief from Judgment (ECF No. 11-15). Petitioner sought leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Mosley*, No. 321537 (Mich. Ct. App. Sept. 19, 2014) (ECF No. 11-18); *People v. Mosley*, 498 Mich. 852 (Mich. June 30, 2015).

Petitioner then filed this habeas corpus petition. He raises these claims:

I. Motion to withdraw guilty plea should have been granted because the plea was unknowingly, unintelligently, and involuntarily made due to ineffective assistance of counsel.

II. Ineffective assistance of counsel.

III. Breach of plea agreement by court and prosecutor.

IV. Prosecutor withheld statements from the victim.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562

U.S. 86, 101 (2011).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 102.  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court."  *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent.  *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)) (Stevens, J., concurring)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 103.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *See Warren v. Smith*, 161

F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

#### A. Voluntariness of Plea

In his first claim for habeas corpus relief, Petitioner argues that his plea was not knowingly and voluntarily entered and that the trial court, therefore, erred in denying his motion to withdraw the plea. He argues that he did not understand that a no contest plea had the same legal consequences as a guilty plea, was pressured into entering a plea, and is actually innocent.

To be valid, a guilty plea must be voluntarily and intelligently made. *Brady v. United States,* 397 U.S. 742, 748-49 (1970). The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id.* at 755, 757 (quotation omitted). "[T]he decision whether or not to plead guilty ultimately rests with the client." *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir. 2002).

Before accepting Petitioner's plea, the trial court engaged in an extensive colloquy with Petitioner. The trial court advised Petitioner of the rights he was giving up by pleading no contest, advised him of the terms of the plea agreement, determined

that no promises, other than those encompassed in the plea agreement, had been made to Petitioner, and that no one had threatened him to force him to enter the plea. Petitioner represented that he understood the terms of the plea agreement. In denying Petitioner's motion to withdraw his plea, the trial court observed that Petitioner understood the terms of the plea agreement and that Petitioner's plea was knowingly and voluntarily entered. The record fully supports this conclusion. There is no evidence that Petitioner was pressured into entering a plea or that he did not understand the consequences of his plea. The Court denies habeas relief on this claim.

Petitioner's claim that he is innocent does not render his plea involuntary. The United States Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970). "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, *a fortiori* a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y.1979) (footnotes omitted). Therefore, Petitioner's claim of actual innocence is not cognizable on habeas review. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

### B. Ineffective Assistance of Trial Counsel Claim

Next, Petitioner argues that his first trial attorney, Philip Sturtz, rendered ineffective assistance. Sturtz represented Petitioner during the initial proceedings including entry of the no contest plea and issuance of a delayed sentence. Petitioner argues that counsel performed ineffectively because he failed to advise Petitioner of the risks and benefits of entering a no contest plea, failed to communicate with Petitioner, and failed to advise Petitioner he had a statutory right to a polygraph examination.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct" and instead "emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

In guilty plea cases, the "performance" prong requires showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). The "prejudice" prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. The petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The trial court considered and denied Petitioner's ineffective assistance of counsel claim when it denied his motion for relief from judgment. The trial court's ruling and subsequent denial of Petitioner's motion for reconsideration are entitled to deference on habeas review. Petitioner fails to show that the trial court's decision was contrary to or an unreasonable application of *Strickland.* First, in cases challenging the voluntariness of a plea, a petitioner is bound by any in-court statements made regarding

the petitioner's understanding of the plea. *See Ramos v. Rogers*, 170 F.3d 560, 564 (6th Cir. 1999). "If we were to rely on [petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless. . . . '[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.'" *Id.* at 566 (*quoting Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). At the plea hearing, Petitioner stated that no promises outside those stated on the record had been made to him and the trial court carefully explained the consequences of his plea and the rights he was giving up by entering a plea. Petitioner is bound by his in-court statements that he understood the plea agreement and its consequences. *See Ramos,* 170 F.3d at 564. Therefore, his contention that counsel was deficient in making failing to explain the ramifications of the plea to him fails.

Next, Petitioner argues that counsel was ineffective in failing to adequately communicate with him prior to entry of his plea and the initial sentencing. Petitioner's challenge in this regard is meritless. Any confusion that arose prior to the entry of Petitioner's plea was addressed and corrected during the plea colloquy and Petitioner, therefore, cannot show prejudice under *Strickland*. *See Ramos*, 170 F.3d at 565 ("[T]he state's trial court's proper colloquy can be said to have cured any misunderstanding [a petitioner] may have had about the consequences of his plea."). As discussed, the record shows that the trial court carefully and accurately advised Petitioner about the potential sentence, the terms of the plea agreement and the rights he would give up by pleading guilty. Under these circumstances, Petitioner cannot show that he was prejudiced by counsel's alleged deficiency.

Finally, Petitioner argues that counsel was ineffective in failing to advise him that he had a statutory right to take a polygraph examination. Michigan law allows a defendant accused of a criminal sexual conduct offense a right to be given a polygraph examination upon request. Mich. Comp. Laws § 776.21(5). If a defendant takes and passes a polygraph test, a law enforcement officer must inform the victim. Mich. Comp. Laws § 776.21(3). Other than informing a victim that the accused has passed the test, the statute does not afford an accused person any other benefits for taking a polygraph examination. Polygraph test results are inadmissible in criminal cases in Michigan. *People v. Phillips*, 469 Mich. 390, 397 (2003). It is possible that some benefit may have inured to Petitioner from a favorable polygraph test result such as an additional bargaining chip in plea negotiations. However, any such benefit is speculative at best and based upon the unproven assumption that Petitioner would have passed the polygraph test. If Petitioner had failed the test, Petitioner's bargaining position may have been negatively impacted. Thus, Petitioner's conclusory claim is far too conclusory to provide a basis for habeas relief.

### C. Unexhausted Claims

Petitioner's third claim for habeas corpus relief concerns an allegation that the prosecutor and trial court judge breached the terms of Petitioner's plea agreement. His fourth claim alleges that the prosecutor withheld statements from the victim. Respondent argues that these claim are unexhausted and procedurally defaulted.

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v.*

*Money*, 142 F.3d 313, 322 (6th Cir. 1998). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather v. Rees*, 822 F.2d 1418, 1420, n.3 (6th Cir. 1987). If a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). However, a petitioner will not be allowed to present unexhausted claims unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Id.* at 1196, *citing Coleman*, 501 U.S. at 750-51.

      Petitioner failed to raise either of these claims in state court. The claims, therefore, are unexhausted. No state court remedy is available to Petitioner to exhaust these claims because he already has filed a motion for relief from judgment in the state trial court and does not argue that the claims falls within the narrow exception to the prohibition against filing successive motions for relief from judgment in state court. To the extent that Petitioner asserts ineffective assistance of appellate counsel as cause to excuse the procedural default of these claims, ineffective assistance of appellate counsel does not excuse the failure to present a claim on collateral review in state court. *Hannah*, 49 F.3d at 1196.

      Thus, these claims are procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage

of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The Supreme Court has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id*. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, these claims are procedurally barred.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the Court's disposition of the claims raised in this petition. Thus, the Court denies a COA.

## V. Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED. Furthermore, the Court DENIES a certificate of appealability. The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: October 25, 2016

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on October 25, 2016, by electronic and/or ordinary mail and also on Dwight Mosley #819606, Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846.

s/Barbara Radke
Deputy Clerk

---